The question in this case is whether the 9 and 10 year period accrued by the father and son respondents is sufficient to establish eligibility for suspension of deportation. Well, there's no question they had the time in total. The question is whether or not it was interrupted by the departure. Isn't that what we have to wrestle with here? Yes, Your Honor. Whether it was continuous, immediately preceding the order to show cause? That's correct, Your Honor. Well, you obviously have a really sympathetic situation. I don't think that there's any doubt about that. But when you're covering things, why shouldn't we defer to the BIA's own administrative construction of the stop time rule and prior Ninth Circuit case law on how to apply the stop time rule to the service order here and the order to show cause? Because you're asking for retroactivity, correct? Yes. In a sense, yes. Which we found in RAM. We said that was okay. Now, in RAM, there wasn't the same fact that we have here. The respondent Petitioners had not accrued eligibility for suspension vis-à-vis a separate time period. But the stop time rule was applied retroactively there. And here, the question is whether or not we would retroactively apply the continuous residency requirement. Is that a difference with a distinction or not? I think it is, in the sense that, and to answer your question, Your Honor, as well, the board, I believe, is reading into the statute the preclusion of the availability of relief for individuals who accrue the statutory period prior to the departure. Well, I thought that the statute always said that you had to have residency prior to the departure. I mean, prior to the order. Continuous residency. It always said you had to have continuous residence, didn't it? Prior to the filing of the application. Is that the period that you're talking about between entry and the filing of the application? I'm not sure of the period you're referring to, Your Honor. Well, I thought that pre-IRERA rule, the statute said that they had to be present for a continuous period preceding the date of the application. Is that right? I can't say that I can recall a case that raised this issue prior to IRAIRA. But what I can say is that the fact that the justification for ruling that the individuals in this case are statutorily barred from applying based on the language of the statutes both in IRAIRA and in NACARA as it was amended to make more clear the retroactivity of the statute, I can say that there is not language in there that states that the period that they have accrued the time isn't sufficient to qualify them for the benefit. Well, you don't have anything to support this in terms of case law, right? Well, I don't. I mean, you're asking us to go where no one's gone before. There is no case law on that particular point. That's correct. And so that's what, you know, we always worry about the slippery slope, that if, you know, while your clients have a very sympathetic situation, you know, where would it start and where would it end? Your Honor, first of all, I would wager that the number of individuals who fit this fact pattern is, as a factual matter, probably quite small in relation to the larger number of people that have been precluded from applying for some time-based relief as a result of IRAIRA. However, the point is that But your rule would be that if you had your time before you left for over 90 days, then you have your time. Is that right? You have your seven years. Would that be? Yeah, if the period was accrued prior to the departure. So the alien could then leave for any length of time? Wouldn't that read out of the statute the 90 days continuous absence or the aggregate of 180 days if there were multiple absences? Wouldn't that be the logical result if we Isn't that what IRAIRA added, though? The 90 days and the 180? Yes. Yeah. So there never was a It wasn't there before. No. Okay. That is what is harming your clients is that 90-day provision. That's correct. Yeah. Okay. And let me follow up on the Chief's question because I thought it was a really good one. Prior to IRAIRA or however you say it, when a deportation proceeding was commenced, the rule was that the time continued to accrue until an application for adjustment was granted, right, before there was any notion of a stop clock? Yes. Okay. So it was the application that was the triggering event, not the initiation of deportation proceedings. That's correct. And I Go ahead. May I say something about that? Yeah, absolutely. I think that's a very significant point because the rules that were laid down in IRAIRA that limited the availability of time-based relief go to, in different ways, the aliens' failure in one way or another to establish their roots here, their Americanization. In other words, if the time period is long or if their intention prior to the change in law, if their intention was to sever ties with the country, then the time period would be long. And so I think that in the perception of Congress, the fact that under the scheme, Your Honor, as you described it, the judge could sort of push the hearing forward to get the person over that 7-year mark, that took that sacred 7 years that Congress had indicated was somehow so important to magically transform a foreigner into someone who had a stake in this country and some, you know, prima facie or assumed hardship if they weren't given the opportunity to present a form of a request for a form of relief, all of those things are not relevant.  It was the tacking on of the time after they were served with an order to show cause that was the abuse that they were trying to get after? Exactly. Yeah. There's no tacking here. That's not true here. I mean, in fact, the people in this case established eligibility for cancellation under the new law. That's how long they were here. So the kinds of rooting and establishment that Congress wanted to limit the benefit to, vis-à-vis the amendments, are met here, because they are indeed what these people accrued in the way of a stake in the United States or roots in their community. So I just want to make sure that I understand it, and then I think maybe we ought to hear from the government. But so the Rahm case that the government relies on, that involved the kind of abuse that Congress was trying to get at? Is that your position? I think so. Whereas this one doesn't. Yes, exactly. Ms. Clark, what was the purpose then in enacting the 90- and 180-day provision? What was the abuse that Congress was attempting to stop? When it was an intent-based excuse where the witness came forward and it was within the discretion of the judge to determine whether the intent described by the alien was sufficient, it was a fuzzier line. And the perception of the intent is separate. The intent being what, to relocate permanently to the United States? The intent to sever ties versus the intent to return. The person is out for, you know, a year, and they say, well, I wanted to get back. I tried to get back, but one thing after another came up. And that period over the years that suspension was adjudicated got longer and longer and longer, and so the way that that could be made not a subject of litigation any longer is just to create a bright-line rule. So today, without regard to the retroactivity problem, if the alien, let's say, had established seven or ten years, is it ten years now? Ten years now, yes. Okay. Let's assume that the alien had established ten years but left for a year and came back. You would agree that under the statute as it currently stands, that ten years wouldn't count. You'd have to start the clock all over again. Well, the direction the case law seems to be going in, and I'm thinking in particular of a case called Vasquez-Lopez v. Ashcroft, 343, Head Third, 961. The direction the case law seems to be going in is that the brief, casual, and innocent. Okay. My hypothetical is not brief, casual, and innocent. I assume the alien had been here for more than ten years and then left for a year and came back and was placed in deportation proceedings with, I guess now, what we would call a notice to appear instead of an order to show cause. You would agree that were it not for the retroactivity problem in this case, the alien would not be eligible for relief because they would have been gone too long. Exactly. And what I'm saying is it seems that there is an imposition of the brief, casual, and innocent as well as the 90-day, 180-day rule, so that the situation you are describing could be controlled by the application of a second rule, which seems to be the direction the courts are going in. So the alien would not get any credit at all for the ten years that he or she had been here before. I think if a court ruled that the long departure was not brief, casual, or innocent, probably not. That would probably be true under the old. Would that be true under the new law, under the existing law, as well as the old law? If my recollection is correct, I think the longest period under the old law was 8 months or something like that. Okay. Thank you. You've more than used your time. We helped you. Your Honor, I wanted to mention also voluntary departure. Can I do that afterwards? Well, you've used your time. We'll give you a minute on rebuttal if you want to respond to the government. Thank you. Good morning. May it please the Court. My name is Cindy Farrier, and I'll be representing John Ashcroft, the Attorney General, in this matter. I think that it is fairly clear that the retroactivity analysis from RAM applies with equal force in this case in order to make clear that the INA Section 240A-D2 also applies similarly in the same fashion as INA Section 240A-D1. Wasn't there in RAM, wasn't there legislative history that showed that the abuse that they were after was exactly what was involved in RAM, this hacking of RAM? Yeah. It did get to some of that. But I think that the arguments that were put forth by Petitioner in this particular case are the same arguments that were addressed in RAM that also apply to the same paragraph. But the congressional intent may not be the same. Well, I mean, the language that is used, I guess the legislative history with regard to NACARA Section 203, which specifically amended the ARERA Section 309C5A. Sorry, this is a bunch of the sections. But to apply, it specifically amended so that the language notices to appear was replaced with orders to show cause. Practical matter, that doesn't make, I mean, what we call it, it's still the, it's an initiation of a deportation proceeding, right? Yes. Yeah. And I guess the provision that it was amending, what it also included, it says paragraphs 1 and 2 of INA Section 240A-D shall apply to orders to show cause. So it's clear that that particular paragraph is also included within that reasoning now. The concerns that I think you may be raising may relate more to the discussion that you were just having with opposing counsel as to whether the time period begins anew once you've been served with an order to show cause. That was a separate issue that the RAM case addressed at the very end of its decision. And that, I think, the legislative intent is perhaps a little bit different than the concerns raised here. There, the concern was, as stated by opposing counsel, that there was an abuse of, a possible abuse by immigration judges to reset out cases and to allow an alien to accrue time. And that concern, that concern is different than this break in physical presence concern. But I do think that. Well, should we be looking at the legislative intent? I think that it could be helpful here, but I don't know that there's as much out there. Well, what's the ambiguity that takes us there? Oh, well, yes. I should make clear. That's the language in this. That was a tough challenge. Oh, thank you. The language itself in the statute does state clearly that, and this was under, this is true under old law and. So I don't want to make your argument for it, but if the language is clear, then we don't look at the legislative intent, is that. I'm going to start with the language, which does say that the continuous physical period of not less than, in this case, seven years, immediately preceding the date of the application for suspension. So there the language. It is clear that, with regard to this specific issue, that the period must be immediately preceding the application. Now, where the ambiguity comes in, that the IJ points to a little bit in her decision, the immigration judge points to, is that, well, you can't have that when you have the order to show cause, which is cutting off that period. Therefore, it's not necessarily going to, the application may not necessarily immediately precede, you know, your period of continuous physical presence. And I guess where you can look then to clarify that and to show that, in fact, it does mean immediately preceding the application is under old case law for the board, actually a 1953 case, which is referenced in the record at page 50 in the Immigration and Naturalization Services brief on appeal to the board. But they say it makes clear that Congress chose the word immediately in the suspension statute to specify the time period only to be considered was directly preceding the application. So the board case law makes that clear. And this Court's decision in RAM also speaks a little bit to this issue when it's acknowledging the difference or discussing the difference between the termination of the continuous physical presence period and just a break in the continuous physical presence period, which are the two differences in the paragraphs 1 and 2. And it says that the term breaks suggests that under certain circumstances, set forth in INA 240 AD2, the clock can stop and then restart. So I think that some of the questions that you may be asking opposing counsel, just to clarify a bit, is that the period, if a person is here for 10 years, they leave for, under this new regime, they leave for, after they've been here for 10 years, this language in the statute does seem to suggest, or at least in the legislative history, does seem to suggest that the period for continuous physical presence would then begin to accrue again after that period until the order to show cause is issued further. If we found that the absence was brief, casual, and innocent, or within the statutory time period less than 90 days? I think, actually, even if it was over the 90-day period, and it did constitute or 180-day aggregate, so it did constitute a break, then I think that the, and yes, it was brief, casual, and innocent, then I think that, yes, it could accrue, they could begin to accrue a period again after that period. However, I think the language in the statute, which you so helpfully reminded me of, which says immediately preceded, makes clear that it can't be prior, you can't have accrued seven years prior to that break and then come back. So I think that that, and there's also a little bit of legislative history in the court's, or in the board's decision, Mendoza-Sandino, where they were describing the Congress's joint explanatory statement. And it said that the joint explanatory statement distinguishes between events that merely break continuous physical presence such that the clock may be reset for a new period of continuous physical presence to begin, and then they distinguish that between events that cause it to terminate forever. Well, tell me the, since you have someone here that's been here, what, like 20 years or something total, and then, of course, you know, if that's not sympathetic enough, then goes back to take care of ill parents and, you know, both of the parents in that sort of situation. What is the parade of horribles that would occur if the, if we construe the language in the way that the appellant is asking, you know, in a broader sense? Well, I guess that I am not as certain as opposing counsel that the numbers are small of people that would, in fact, fit this fact pattern. And I'm just not sure of that, and I think it could potentially affect a larger, quite a larger number of people. I also think that by doing that, you're also not giving effect to Congress, to Congress's specific enactment of the provisions, which say that this, that these provisions, this stop-time rule, the break in continuous physical presence shall apply to persons that weren't seen. The problem is that whether this is continuous or not might, might be, the result might be very different if you didn't have the 90-day and 180-day bright-line rules. And it, that's, that's the problem that we have. But it's not, not with the, not with the, necessarily with, with the meaning of the continuous presence. I see. Could we do some rough justice here by finding that because of the circumstances surrounding the departure, that it, even though it exceeds the aggregate of 180 days, that it was nonetheless brief, casual, and innocent? Would that allow us to, to save the aliens here without creating a precedent that might impact an unknown number of people? Well, I, I think that the, that Congress is making clear that it was doing away with the brief, casual, and innocent sort of analysis with the adoption of D-2. But you would concede that that doctrine is still alive and kicking in the Ninth Circuit? Well, I'm, I'm not sure that that's what Congress had intended. But. We don't have the power as a three-judge panel to make that declaration, do we? No, of course you do not. But I, I, I guess I would, I would say that the, that the statute doesn't allow for it specifically, so. Okay. We understand. We understand. Do you wish to add anything, briefly? Your Honor, the development in the case of late is that the daughter of the elder petitioner has naturalized and has one of these interminable petitions pending. Should we be considering this? Or are you going to tell us someone has cancer now, too? I'm already on the verge of tears. Some more horror stories. So we've attempted to forestall this process, or we wanted to do that, by having that resolved. And we've made efforts with the agency to do that. But that has not been successful thus far. And, of course, we still have the child petitioner. Well, he's not a child anymore, but the younger petitioner. Would it be her brother? That would be her brother, correct. Okay. And so if the, the court would consider staying the mandate in the event that that were necessary, we'd like to make a motion to do that. Take it. You'll take anything you can get. Okay. How much time do you need? Or do you know? I would say for six months, perhaps. Okay. Thank you. Thank you. Case disargued is submitted for decision.
judges: Schroeder, Tallman, Callahan